IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL J. VIDRINE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:18-00172-N |
| | ) | |
| ANDREW M. SAUL, | ) | |
| *Commissioner of Social Security*,[1] | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul J. Vidrine brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 11, 16, 20)[2] and those portions of the administrative record (Doc. 9) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the

---

[1] Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited June 25, 2019)). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] With the Court's leave, and without opposition from Vidrine, the Commissioner filed a corrected brief (Doc. 20), which was deemed to "entirely supersede her initial brief" (Doc. 13). (*See* Docs. 19, 21). Thus, the Commissioner's initial brief (Doc. 13) has not been considered in reaching the conclusions herein.

Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[3]

## I. *Background*

Vidrine filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on February 14, 2014. Both applications alleged disability beginning June 30, 2009.[4] After his applications were initially denied, Vidrine requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on August 31, 2016. On April 25, 2017, the ALJ issued an unfavorable decision on Vidrine's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 17 – 43).

The Commissioner's decision on Vidrine's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 23, 24). The parties jointly waived the opportunity for oral argument. (*See* Docs. 22, 25).

[4] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

request for review of the ALJ's decision on February 12, 2018. (R. 1 – 5). Vidrine subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d

1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5] "In determining whether substantial evidence exists, [a

---

[5] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam)

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.

---

(Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[6]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Vidrine met the applicable insured status requirements through December 31, 2014, and that he had not engaged in substantial gainful activity since June 30, 2009, the alleged disability onset date. (R. 22). At Step Two, the ALJ determined that Vidrine had the following severe impairments: right ankle dysfunction; gout; lumbar degenerative disc disease; digestive disorders; hypertension; coronary artery disease; asthma/chronic obstructive pulmonary disease; affective disorder; anxiety disorder; and substance abuse disorder, not material. (R. 22 – 23). At Step Three, the ALJ found that Vidrine did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in the Listing of Impairments. (R. 23 – 26). At Step Four, the ALJ determined that Vidrine had the residual functional capacity (RFC)[8] "to perform medium work as defined in 20 CFR 404.1567(c) and

---

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. §

416.967(c),[9] except that he can occasionally climb and crawl; frequently stoop, kneel, and crouch; occasionally operate foot controls with the right lower extremity; frequently handle and finger; and never have exposure to unprotected heights." The ALJ further limited Vidrine "to the performance of simple, routine tasks in two-hour increments with normal breaks for the duration of an eight-hour workday; occasional interaction with the public; and occasional changes in routine work settings." (R. 26 – 41).

Based on this RFC, the ALJ determined that Vidrine was unable to perform any past relevant work. (R. 41). At Step Five, after considering the testimony of a vocational expert,[10] the ALJ found that there exist a significant number of jobs in

---

> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously

the national economy that Vidrine could perform given his RFC, age, education, and work experience. (R. 41 – 42). Thus, the ALJ found that Vidrine was not disabled under the Social Security Act. (R. 42).

## IV. *Analysis*

### a. Appointments Clause Challenge

Vidrine's first claim of error asserts that his case must be remanded to the Commissioner for a new hearing because, based on the reasoning in the United States Supreme Court's recent decision *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the ALJ who issued the unfavorable decision on his applications should be considered an "Officer of the United States" who was not properly appointed in accordance with the Appointments Clause of Article II, Section 2 of the United States constitution. In response, the Commissioner argues that Vidrine forfeited this claim by failing to raise it at the administrative level.[11] While conceding that he did not raise his Appointments Clause challenge at the administrative level, Vidrine argues that he was not required to do so in order to preserve that claim for judicial review, and alternatively, that the Court should exercise its discretion to excuse any forfeiture of the claim.

Adopting the reasoning in *Abbington v. Berryhill*, No. CV 1:17-00552-N, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018), the Court finds that Vidrine has forfeited his

---

determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[11] The Commissioner expressly declines to argue whether Social Security ALJs are "Officers of the United States" subject to the Appointments Clause (*see* Doc. 20 at 3 n.2), and the Court expresses no opinion on that issue.

Appointments Clause challenge by failing to first raise it before the Social Security Administration, and that he has not shown sufficient cause to excuse the forfeiture. Accordingly, Vidrine's first claim of error is **OVERRULED**.

### b. Standing & Walking Requirement of the RFC

The RFC assigned Vidrine the ability to perform a reduced range of medium work. Because the RFC included no additional standing or walking restrictions, the ALJ therefore necessarily found that Vidrine could engage in "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6; *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 352 (11th Cir. 2018) (per curiam) (unpublished) ("The Commissioner has elaborated on the definition of 'medium work' in Social Security Ruling ('SSR') 83-10, which is binding on ALJs. *See* 20 C.F.R. § 402.35(b)(1).").[12] *See also* 20 C.F.R. §§ 404.1567(b)-(c),416.967(b)-(c) ("Light work…requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls…If someone can do medium work, we determine that he or she can also do sedentary and light work."). Vidrine's second claim of error is that this finding is in conflict with two medical

---

[12] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). "Even though the rulings are not binding on [federal courts], [courts] nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished) (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 27, 1981)).

opinions to which the ALJ appeared to credit.[13]

The undersigned agrees with the Commissioner that that neither medical opinion Vidrine challenges is inconsistent with the standing and walking requirements for medium work. As the ALJ correctly noted,[14] consultative examining physician Dr. Aaron Mates opined that Vidrine could stand and walk up to 4 hours at a time each without interruption, and that he could stand and walk up to 4 hours each in an 8-hour work day (R. 530) – in other words, that Vidrine could spend an entire 8-hour workday alternating between standing and walking, which more than covers the requirements for medium work. Non-examining medical consultant Dr. Allan Goldstein opined that Vidrine could stand up to 2 hours, and walk up to 1 hour, at a time without interruption, and that he could stand up to 4

---

[13] Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).

Recently, the SSA substantially revised the regulations governing how it considers medical opinions. However, those revisions only apply to claims filed on or after March 27, 2017, and are therefore inapplicable to Vidrine's subject applications. *See* 20 C.F.R. § 404.1520c.

[14] (*See* R. 28 ("Dr. Mates…opined that the claimant could sit for four hours at one time, could stand for four hours at one time, could walk for four hours at one time, could sit for four hours total during an eight-hour workday, could stand for four hours total during an eight-hour workday, and could walk for four hours total during an eight-hour workday.")).

hours total, and walk up to 3 hours total, in an 8-hour work day (R. 684) – in other words, that he could spend 7 hours of an 8-hour workday alternating between standing and walking, which also more than covers the requirements for medium work.[15][16]

Vidrine also cites two pages of exam notes regarding April 25, 2016 x-rays of his right ankle and lumbar spine, which he claims "indicate the presence of medical conditions which preclude [him] from being able to engage in standing and walking for six hours per workday…" (*See* Doc. 11 at 7 (citing R. 520 – 521)). However, "the mere existence of these impairments does not reveal the extent to which they limit [Vidrine's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (per curiam). The ALJ expressly noted the right ankle x-ray in her decision, but also noted that Dr. Mates, in examining Vidrine the following month, observed that Vidrine was able to stand

---

[15] The ALJ incorrectly stated that Dr. Goldstein limited Vidrine to 2 hours total of walking instead of 3 hours (*compare* R. 684 (Dr. Goldstein checks box that Vidrine can walk up to 3 hours in an 8 hour work day) *with* R. 28 ("Dr. Goldstein opined that the claimant could sit for two hours at one time, stand for two hours at one time, walk for one hour at one time, sit for six hours total during an eight-hour workday, stand for four hours total during an eight-hour workday, and **walk for two hours total** during an eight-hour workday." (emphasis added))). Nevertheless, even that would still result in 6 hours of an 8-hour workday spent alternating between standing and walking, which is sufficient for medium work.

[16] Another non-examining physician, Dr. S. Amon, opined that Vidrine could perform medium work with no additional standing and walking limitations. The ALJ gave Dr. Amon's opinion great weight as well, finding it was "consistent with the record as a whole" and was "generally consistent with" Dr. Goldstein and Dr. Mates's opinions (*See* R. 27). Because, as noted, Dr. Goldstein and Dr. Mates's opinions both support the finding that Vidrine could perform the full range of standing and walking required by medium work, Dr. Amon's opinion further supports that conclusion.

and walk without difficulty. (R. 30, 525, 527).[17] Thus, the ALJ's determination that Vidrine can perform the standing and walking requirements of medium work is supported by substantial evidence, and the Court **OVERRULES** Vidrine's second claim of error.

### c. Pulmonary Limitations

Dr. Goldstein also opined that Vidrine "could occasionally work around…humidity, wetness, dust, odors, fumes, [and] pulmonary irritants…" (R. 28). Vidrine's third and final claim of error is that the ALJ erred by failing, without explanation, to include those pulmonary limitations in the RFC. The undersigned finds no such reversible error.

First, the ALJ gave the opinion of Dr. Goldstein, a non-examining physician, only "significant weight," as opposed to controlling or even great weight. (R. 28). "At least where the opinion is not from a treating source, the Eleventh Circuit imposes no rigid requirement that an ALJ, in crediting a medical opinion, must repeat it word for word in the RFC determination." *Caffey v. Colvin*, Civil Action No. 15-00490-N, 2016 WL 6436564, at *9 (S.D. Ala. Oct. 28, 2016) (footnote omitted). The SSA's "rules do not provide that [even] an examining physician's opinion may receive 'controlling weight' as a treating source might." *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished). Moreover, a "claimant's residual functional capacity is a matter

---

[17] Dr. Mates further observed that Vidrine "did not fully cooperate during the examination[,]" noting "some intentional discoordination…, as well as a lack of full effort when performing a particular examination maneuver." (R. 30, 527, 534).

reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (per curiam) (unpublished). *See also Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) (per curiam) (unpublished) ("[A]lthough the Commissioner will consider opinions from medical sources on issues such as the RFC and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner." (citing 20 C.F.R. § 404.1527(d)(2))).

Moreover, the ALJ acknowledged evidence that Vidrine "has experienced intermittent and sporadic exacerbations of asthma/chronic obstructive pulmonary disease" but found that Vidrine's symptoms "are capable of control with the proper and regular use of the appropriate medications and abstinence from cigarettes." (R. 37). Based on these findings, the ALJ determined that there was "no persuasive corroborating evidence for limitation beyond those included in the residual functional capacity related to [Vidrine]'s respiratory condition." (R. 37). Thus, the ALJ sufficiently explained why the objective evidence did not support including Dr. Goldstein's pulmonary limitations in the RFC, and Vidrine offers no meaningful argument challenging that explanation.[18]

Additionally, the undersigned is persuaded by the Commissioner's argument

---

[18] *Watkins v. Berryhill*, No. CA 17-0522-MU, 2018 WL 3615995 (S.D. Ala. July 27, 2018) (Murray, M.J), and *Cryar v. Berryhill*, No. CV 17-00238-N, 2018 WL 1220703 (S.D. Ala. Mar. 8, 2018) (Nelson, M.J.), both of which Vidrine cites in support of his third claim, are therefore distinguishable, as in each of those cases the district court found error where the ALJ failed to give an explanation for rejecting a portion of a medical opinion.

that any error in failing to incorporate Dr. Goldstein's pulmonary limitations into the RFC was harmless. *See Colon v. Colvin*, 660 F. App'x 867, 869 (11th Cir. 2016) (per curiam) (unpublished) ("An error is harmless if it does not affect the ALJ's ultimate decision." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). At Step Five, the ALJ determined that Vidrine could perform work as an assembler, a hand packager, and a laundry worker. (R. 42). The Commissioner correctly notes that the job of assembler requires no exposure to extreme temperatures, wetness, humidity, or atmospheric conditions. *See* Dictionary of Occupational Titles 806.684-010, 1991 WL 681470 (4th ed. 1991). The job of laundry worker similarly does not require exposure to extreme temperatures, or atmospheric conditions, and requires only occasional exposure to wetness and humidity, *see id.* 361.684-014, 1991 WL 672983, which is consistent with Dr. Goldstein's opinion. The VE testified, and the ALJ accepted, that 1,195,000 such jobs exist in the national economy, which appears to still constitute a significant number of jobs in the national economy supporting a Step Five finding that a claimant is not disabled. *Cf. Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished) (affirming ALJ's determination that 840 jobs constituted a significant number in the national economy); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (per curiam) (unpublished) (affirming ALJ's determination that 23,800 jobs constituted a significant number in the national economy).

Accordingly, Vidrine's third and final claim of reversible error is **OVERRULED**. There being no other claims of error raised, the Court finds that

the Commissioner's final decision denying Vidrine benefits is therefore due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Vidrine's February 14, 2014 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 25th day of June 2019.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**